IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JACOB BUTKO, DERRICK PEOPLES, SHAUN MEESAK and RUBEN VAZQUEZ, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF CHICAGO, OFFICER EDWARD WODNICKI, OFFICER JOHN SEBECK, OFFICER V. FERRO, OFFICER B. FINNEGAN, OFFICER N. FORRESTAL, and UNKNOWN CHICAGO POLICE OFFICERS, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

FILED

JUL 2 6 2007
JUL 26 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

07CV4207
JUDGE GUZMAN
MAG.JUDGE ASHMAN

JURY TRIAL DEMANDED

## COMPLAINT

NOW COME Plaintiffs, JACOB BUTKO, DERRICK PEOPLES, SHAUN MEESAK, and RUBEN VAZQUEZ, by their attorneys LOEVY & LOEVY, and complaining of Defendants, CITY OF CHICAGO, OFFICER EDWARD WODNICKI, OFFICER JOHN SEBECK, OFFICER V. FERRO, OFFICER B. FINNEGAN, OFFICER N. FORRESTAL and UNKNOWN CHICAGO POLICE OFFICERS (hereinafter, collectively "Defendant Officers"), state as follows:

### Introduction

1.    This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

2.    Plaintiffs, four men in their late twenties, were
beaten severely by Defendant Officers both before and after they
were handcuffed and defenseless.

## Jurisdiction and Venue

3.    This Court has jurisdiction of the action pursuant to
28 U.S.C. §§ 1331 and 1367.

4.    Venue is proper under 28 U.S.C. § 1391(b).   On
information and belief, all parties reside in this judicial
district.   The events giving rise to the claims asserted herein
occurred within the district.

## The Parties

5.    Plaintiff Jacob Butko is 28 years old.   He graduated
from Johnsburg High School, in Johnsburg, Illinois in 1997, and
received his B.A. from the Columbia College of Chicago in 2004.
Butko is currently an Interactive Account Manager for Swivel
Marketing.

6.    Plaintiff Derrick Peoples is 29 years old.   He
graduated from Billy Ryan High School in Denton, Texas in 1996,
and received his B.A. from Lubbock Christian University in 2004.
Peoples is currently a Senior Account Coordinator for Marketing
Werks, Inc.

7.    Plaintiff Shaun Meesak is 28 years old and graduated
from McHenry High School (West Campus) in McHenry, Illinois in
1997.   He then enlisted in the United States Marine Corps for

2

four years, receiving an honorable discharge as a Sergeant in 2002. Meesak attended Northern Illinois University and DeVry University, and is currently an Apprentice for the Operating Engineers Union, Local 150.

8.    Plaintiff Ruben Vazquez is 27 years old, and graduated from McHenry High School (West Campus) in McHenry, Illinois in 1998. Vazquez is currently a medical file clerk at Home Physicians.

9.    On information and belief, all of the individual defendants are police officers for the City of Chicago.

### Background

10.    On or about January 7, 2007, in the early morning, Plaintiffs Jacob Butko, Shaun Meesak and Ruben Vazquez were crossing the street at Clark Street and Leland Avenue in Chicago, Illinois.

11.    A car, not marked as a police vehicle, ran a stop sign and almost hit Butko, Meesak and Vazquez. Butko yelled and gestured at the vehicle. None of these individuals took any action which warranted arrest. None of them broke any law.

12.    The vehicle nevertheless stopped and individuals exited from it. Plaintiffs now know that these individuals were police officers. Shortly thereafter, another vehicle stopped and other police officers exited.

3

## Assault and Battery of Plaintiffs
## Meesak and Vazquez

13.  Two of the officers approached Plaintiffs Meesak and Vazquez and ordered them up against a nearby fence.

14.  One of the officers, believed to be defendant Officer Ferro ("Ferro"), repeatedly punched Meesak and Vazquez, including hitting them in the face.  Another officer, believed to be defendant Officer Sebeck ("Sebeck"), looked on but did nothing to stop the assault and battery.

15.  At the time they were assaulted and battered, neither Meesak nor Vazquez were resisting the officers or otherwise provoking them.  Neither Meesak nor Vazquez fought back as they were being assaulted and battered.

16.  After the initial assaults and batteries, Vazquez was permitted to leave, but Meesak was not.  Meesak was then assaulted and battered again by Officer Ferro and other officers, including being punched repeatedly and choked nearly to the point of unconsciousness.  These assaults and batteries continued even after Meesak was handcuffed.  Meesak did nothing improper to provoke these subsequent assaults and batteries, and did not fight back.  Ultimately, Meesak was taken to a squadrol.

17.  Plaintiffs Meesak and Vazquez suffered injuries as a result of these assaults and batteries, including but not limited to cuts and bruises, and emotional distress.

4

**Plaintiff Butko**

18. An individual, believed to be Officer Finnegan ("Finnegan"), approached Plaintiff Butko, threw him onto a car, and punched him repeatedly, including hitting him in the face. Butko did nothing improper to provoke this assault and battery, and did not fight back during it.

19. After assaulting and battering Butko, Officer Finnegan handcuffed Butko. Officer Finnegan then punched Butko several more times even though he was handcuffed. Butko did nothing improper to provoke this assault and battery and did not resist it.

20. After assaulting and battering Butko, Officer Finnegan escorted Butko to a squadrol.

21. Plaintiff Butko suffered injuries from this assault and battery, including but not limited to cuts and bruises and emotional distress.

**Plaintiff Peoples**

22. Plaintiff Peoples witnessed the assaults and batteries on Plaintiffs Meesak and Vazquez. Peoples objected and demanded that the officers stop.

23. In response to a threat by a police officer, believed to be Officer Wodnicki, Peoples retreated into a nearby bar. Officer Wodnicki entered the bar, approached Peoples, drew his gun and pointed it at Peoples' face. Peoples did nothing

5

improper to provoke Officer Wodnicki or to provide a reason why
Officer Wodnicki should have drawn his gun.  Peoples was
understandably terrified.

24.  Officer Wodnicki dragged and pushed Peoples out of the
bar.  Peoples did not resist.  Once outside, Officer Wodnicki and
another officer, believed to be Officer Forrestal, assaulted and
battered Peoples, including slamming his head against the ground.
These assaults and batteries continued even after Peoples was
handcuffed.

25.  Peoples did not resist or fight back while he was being
assaulted and battered by Officers Wodnicki and Forrestal.

26.  After the assaults and batteries, a police officer
escorted Peoples to the squadrol.

27.  As a result of these assaults and batteries, Plaintiff
Peoples suffered injuries including bruises and emotional
distress.

**Post-Assault Misconduct**

28.  Once Plaintiffs Meesak, Butko and Peoples were placed
in the squadrol, they were taken to a police station.  At the
police station, Meesak asked the officers for medical attention
but was denied it and not taken to a hospital.

29.  Meesak, Butko and Peoples were kept in different rooms
at the station, handcuffed to walls.  While they were handcuffed,

6

Officer Ferro threatened them with additional assaults and batteries.

30. At no point did Plaintiffs commit a crime or take any action to give Defendant Officers probable cause to believe they had committed a crime.

31. Nevertheless, Plaintiffs Butko, Meesak and Peoples were falsely charged with crimes, including reckless conduct, disorderly conduct and resisting or obstructing a peace officer. At a hearing on these charges, Officers Ferro and Finnegan gave false testimony concerning what had occurred. Butko, Meesak and Peoples were ultimately compelled to plead guilty to disorderly conduct to avoid a trial; if the police were believed and they were convicted, Butko, Meesak and Peoples could have been sentenced to significant time in jail.

32. In addition to the physical injuries they suffered, each of the Plaintiffs were also emotionally traumatized by their beating and the injustice of the aftermath.

33. Plaintiffs Butko, Meesak and Peoples complained about their mistreatment on the day that they were beaten. Their complaints were ignored. In addition, Plaintiff Vazquez filed a complaint with the City's Office of Professional Standards ("OPS"), but then determined that his complaint would not be investigated seriously and did not continue with the complaint.

7

## City of Chicago's Failure to Train,
## Discipline and Control

34. Municipal policy-makers have long been aware of the
City of Chicago's policy and practice of failing to properly
train, monitor and discipline its police officers:

a. Following two high profile, unjustified police
shootings in 1999, the City Council held public hearings. On
September 28, 1999, then-Superintendent of the Chicago Police
Department Terry Hillard gave a speech highlighting the problems
with the City of Chicago's policies and practices relating to the
use of force. Superintendent Hillard specifically noted the need
for (1) better in-service training on the use of force; (2) early
detection of potential problem officers and (3) officer
accountability for the use of force.

b. In a review commissioned by the Superintendent,
John Marshall Law School found that although the City of
Chicago's policies on the use of force were in compliance with
the law, more training of police officers was necessary.

c. Moreover, in January 2000, the Chairman of the
Committee on Police and Fire of the Chicago City Council
submitted an official resolution recognizing that "[Chicago]
police officers who do not carry out their responsibilities in a
professional manner have ample reason to believe that they will
not be held accountable, even in instances of egregious
misconduct."

8

d.    A study performed a year later by the Justice
Coalition of Greater Chicago ("JCGC"), a coalition of more than a
hundred community groups, confirmed that resolution.
Specifically, the JCGC study concluded that the Chicago Police
Department lacked many of the basic tools necessary to identify,
monitor, punish and prevent police misconduct and brutality.    The
JCGC findings were presented to Mayor Daley, Superintendent
Hillard and the Chicago Police Board.

e.    Two years later, Garcia v. City of Chicago, 2003
WL 22175618, *2 (N.D.Ill. Sept. 19, 2003) affirmed that the
City's police misconduct investigations were systematically
"incomplete, inconsistent, delayed, and slanted in favor of the
officers" and as a result, fostered a culture of impunity within
the Chicago Police Department.

f.    Indeed, by its own accounting, in 2004 the City of
Chicago sustained only four percent of the complaints brought
against police officers for use of excessive force.    An even
smaller percentage of officers were actually disciplined for such
conduct.

35.    Although the City of Chicago has long been aware that
its supervision, training and discipline of police officers is
entirely inadequate, it has not enacted any measures to address
that failure.

36. In 1996, the City of Chicago intentionally abandoned a program designed to track police officers repeatedly acting in an abusive manner because of opposition by the Police Union. The City promptly deleted all data contained in the program, including the list of problem officers.

37. In 2000 and 2001, the City continued to refuse to implement a system allowing for detection of repeat police officer-offenders, despite the fact that the Commission on Accreditation for Law Enforcement Agencies adopted a standard mandating such a detection system for large agencies such as Chicago.

38. In 2003, although the City of Chicago and the Police Union negotiated a new contract allowing the Chicago Police Department to use unsustained OPS cases "to identify patterns of suspected misconduct about which the public and regulatory agencies are so intensely and legitimately concerned," no such pattern analysis has ever been implemented. Indeed, pursuant to that contract, OPS records are only kept for seven years, precluding any meaningful long-term analysis of an officer's misconduct.

39. Finally, the City of Chicago's training of its officers has not changed since 1999, despite repeated promises by the City and City policymakers for a more comprehensive training program.

10

## Count I -- 42 U.S.C. § 1983

### Excessive Force

40.    Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

41.    As described in the preceding paragraphs, the conduct of Defendant Officers toward Plaintiffs constituted excessive force in violation of the United States Constitution.

42.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

43.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

44.    The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in that:

a.    As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.    As a matter of both policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline

11

prior instances of similar misconduct, thereby leading Chicago
Police Officers to believe their actions will never be
scrutinized and, in that way, directly encouraging future abuses
such as those affecting Plaintiffs; specifically, Chicago Police
Officers accused of excessive force can be confident that the OPS
will not investigate those accusations in earnest and will refuse
to recommend discipline even where the Officer has engaged in
excessive force;

      c.    Generally, as a matter of widespread practice so
prevalent as to comprise municipal policy, officers of the
Chicago Police Department abuse citizens in a manner similar to
that alleged by Plaintiffs in this Count on a frequent basis, yet
the Chicago Police Department makes findings of wrongdoing in a
disproportionately small number of cases;

      d.    Municipal policy-makers are aware of, and condone
and facilitate by their inaction, a "code of silence" in the
Chicago Police Department, by which officers fail to report
misconduct committed by other officers, such as the misconduct at
issue in this case; and

      e.    The City of Chicago has failed to act to remedy
the patterns of abuse described in the preceding sub-paragraphs,
despite actual knowledge of the same, thereby causing the types
of injuries alleged here.

12

45. As a result of the unjustified and excessive use of force by Defendant Officers, as well as the City's policy and practice, Plaintiffs have suffered pain and injury, as well as emotional distress.

46. The misconduct described in this Count was undertaken by Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

### Count II -- 42 U.S.C. § 1983

### Unlawful Seizure

47. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

48. As described more fully above, the Defendant Officers unlawfully detained Plaintiff Vazquez without legal justification.

49. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

50. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described in preceding paragraphs.

51. As a result of the above-described wrongful infringement of Plaintiff Vazquez's rights, he suffered damages, including but not limited to emotional distress and anguish.

13

52. The misconduct described in this Count was undertaken
by the Defendant Officers within the scope of their employment
and under color of law such that their employer, City of Chicago,
is liable for their actions.

### Count III -- 42 U.S.C. § 1983

### Denial of Medical Attention

53. Each of the Paragraphs in this Complaint is
incorporated as if restated fully herein.

54. As described more fully above, after being beaten by
Defendant Officers, Plaintiff Meesak requested medical attention.
Despite having actual knowledge of his medical condition, the
Defendant Officers failed to provide Meesak with medical
attention.

55. In this manner, the conduct of the Defendant Officers
was objectively unreasonable and deliberately indifferent to
Meesak's medical needs.

56. The misconduct described in this Count was undertaken
pursuant to the policy and practice of the Chicago Police
Department in the manner described in the preceding paragraphs.

57. As a result of the Defendant Officers' objectively
unreasonable conduct and deliberate indifference to necessary
medical needs, Plaintiff Meesak suffered additional damages,
including but not limited to mental distress and anguish.

14

58. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

## Count IV -- 42 U.S.C. § 1983

### Conspiracy

59. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

60. As described more fully in the preceding paragraphs, prior to the assault and battery on Plaintiffs described above, the Defendant Officers, acting under color of law and within the scope of their employment, entered into an agreement amongst themselves and other unknown police officers to deprive Plaintiffs of their constitutional rights.

61. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

62. As a proximate result of this conspiracy, Plaintiffs suffered damages, including the deprivation of Plaintiffs' constitutional rights and emotional distress.

63. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

## Count V -- 42 U.S.C. § 1983

### Failure to Intervene

64. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

65. One or more of the Defendant Officers had a reasonable opportunity to prevent another Officer from violating Plaintiffs' constitutional rights as described above, had they been so inclined, but they failed to do so.

66. As a result of the Defendant Officers' failure to intervene, Plaintiffs suffered pain and injury, as well as emotional distress.

67. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others.

68. The misconduct described in this Count was undertaken pursuant to the policy and practice of the Chicago Police Department in the manner described more fully above.

69. The misconduct described in this Count was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions.

## Count VI -- State Law Claim

### Assault and Battery

70.  Each of the Paragraphs in this Complaint is
incorporated as if restated fully herein.

71.  As described in the preceding paragraphs, the conduct
of the Defendant Officers, acting under color of law and within
the scope of their employment, constituted unjustified and
offensive physical contact, undertaken willfully and wantonly,
proximately causing Plaintiffs' injuries.

72.  The misconduct described in this Count was objectively
unreasonable and was undertaken intentionally with willful
indifference to Plaintiffs' constitutional rights.

73.  The misconduct described in this Count was undertaken
with malice, willfulness, and reckless indifference to the rights
of others.

74.  As a result of this misconduct touching, all Plaintiffs
sustained injuries, including but not limited to bodily harm and
a reasonable apprehension of bodily harm.

75.  The misconduct described in this Count was undertaken
by the Defendant Officers within the scope of their employment
and under color of law such that their employer, City of Chicago,
is liable for their actions.

17

## Count VII -- **State Law Claim**

### **Respondeat Superior**

76. Each of the Paragraphs in this Complaint is
incorporated as if restated fully herein.

77. In committing the acts alleged in the preceding
paragraphs, the Defendant Officers were members and agents of the
Chicago Police Department acting at all relevant times within the
scope of their employment.

78. Defendant City of Chicago is liable as principal for
all torts committed by its agents.

### **Count VIII -- State Law Claim**

### **Indemnification**

79. Each of the Paragraphs in this Complaint is
incorporated as if restated fully herein.

80. Illinois law provides that public entities are directed
to pay any tort judgment for compensatory damages for which
employees are liable within the scope of their employment
activities.

81. The Defendant Officers are or were employees of the
Chicago Police Department, who acted within the scope of their
employment in committing the misconduct described herein.

WHEREFORE, Plaintiffs, JACOB BUTKO, DERRICK PEOPLES, SHAUN
MEESAK, and RUBEN VAZQUEZ respectfully request that this Court
enter judgment in their favor and against Defendants, CITY OF

18

CHICAGO, OFFICER EDWARD WODNICKI, OFFICER JOHN SEBECK, OFFICER V.
FERRO, OFFICER B. FINNEGAN, OFFICER N. FORRESTAL and UNKNOWN
CHICAGO POLICE OFFICERS, awarding compensatory damages and
attorneys' fees, along with punitive damages against the
Defendant Officers in their individual capacities, as well as any
other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs, JACOB BUTKO, DERRICK PEOPLES, SHAUN MEESAK, and
RUBEN VAZQUEZ hereby demand a trial by jury pursuant to Federal
Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Bradley Block
LOEVY & LOEVY
312 North May St
Suite 100
Chicago, IL 60607
(312) 243-5900

19